IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANNETTE M. WRIGHT,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration;<br><br>                    Defendant. | 4:14CV3015<br><br>**MEMORANDUM AND ORDER** |

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("SSA"). Filing No. 1. Annette M. Wright appeals the final determination denying her application for Social Security benefits under Title II and Title XVI of the Social Security Act., 42 U.S.C. § 401 et seq. and 42 U.S.C. § 1381 et seq., respectively. This court has jurisdiction under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Upon review of the record, this court concludes that the decision of the Administrative Law Judge ("ALJ") denying benefits is not supported by substantial evidence. Accordingly, the decision of the ALJ, and thereby the Commissioner, is reversed.

**I.  BACKGROUND**

Plaintiff alleges a disability dating from April 29, 2011, and her severe impairments as found by the ALJ include "fibromyalgia, obesity, arthritis, depression, personality disorder, and anxiety" (Tr. 9, at page 19, Finding 3).[1] Plaintiff's mental impairments include Bipolar Disorder and General Anxiety Disorder (Tr. 316, 318, 322, 363, 394, 398, 410, 415 and 420). Her feelings of anxiety increase when she attempts to leave the house and she has panic attacks with groups of people (Tr. 319). These issues would call into question the

---

[1] Each reference in this Memorandum and Order to the Transcript (Tr.) is in regard to Filing No. 9, Attachments 1-8.

ability to interact with the general public on even an occasional basis as found by the ALJ (Tr. 22).

Plaintiff applied for benefits on May 31, 2011 (Tr. 166, 168). She was 42 years old on the alleged disability onset date and has a high school education. Her past relevant work is unskilled. She is considered obese, weighing 286 pounds and is five feet seven inches tall. Her applications were denied initially and again on reconsideration, and she appealed the denial to an ALJ (Tr. 74-75, 77-78, 80, 91, 96, 102). After holding an administrative hearing on December 12, 2012 (Tr. 35-72, Transcript of Hearing), the ALJ issued an unfavorable decision on December 20, 2012 (Tr. 17-29). After careful consideration of the entire record, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, obesity, arthritis, depression, personality disorder, and anxiety (Tr. 19). The ALJ found Plaintiff's impairments did not satisfy any Appendix 1 Listing of Impairments (Tr. 20). The ALJ determined that Plaintiff nevertheless retained the Residual Functional Capacity (RFC) to perform a reduced range of light work (Tr. 22). After consulting a VE, the ALJ concluded that Plaintiff's impairments would not prevent her from performing her past work as an office helper (Tr. 27), and, alternatively, other work that exists in significant numbers in the national economy, including work as a photocopy machine operator, mail clerk, and small products assembler (Tr. 28). Consequently, the ALJ found that Plaintiff was not disabled (Tr. 29).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 2, 2013 (Tr. 1-6). The ALJ's decision is therefore a "final decision" subject to judicial review under 42 U.S.C. § 405(g). Plaintiff filed her Complaint for judicial review in this Court on January 23, 2014.

Plaintiff was 44 years old at the time of the ALJ's decision. She previously worked as a nurse's assistant and a secretary office helper. Plaintiff saw Kathryn Hajj, M.D., on November 11, 2010 (Tr. 331). She reported joint stiffness and myalgias (fibromyalgia), and anxiety and depression (Tr. 330-32). She saw Joan Stahly Rouse, a licensed counselor, with various situational complaints concerning her condition, having facial hair growth, and her financial situation (Tr. 338). Ms. Rouse assigned plaintiff a Global Assessment of Functioning (GAF) score of 60-65. (Tr. 338). Dr. Hajj referred Plaintiff to Walter Duffy, M.D., and his physician assistant, D. Sue Shade, performed the mental status examination on May 24, 2011 (Tr. 318-23).

The agency sent plaintiff's records to Lee Branham, Ph.D, a State agency doctor, who completed a mental RFC checklist form on July 22, 2011 (Tr. 340-42). Dr. Branham used the checklist form to formulate his mental RFC opinion (Tr. 340-42). Plaintiff attended a consultative physical examination with Ruilin Wang, M.D. on August 4, 2011 (Tr. 360). Jerry Reed, M.D., a State agency doctor, opined on August 9, 2011, that despite her fibromyalgia pain, the medical records showed Plaintiff could perform light and sedentary work. Plaintiff underwent psychological testing with Stanley Carlock, Ed.D., on August 16, 2011 (Tr. 401). The results of the Neurobehavioral Cognitive Status Examination (Cognistat) were all within the average range, indicating that Plaintiff did not have a cognitive disorder (Tr. 401). The results of the Millon Clinical Multiaxial Inventory – Third Edition (MCMI-III) indicated depression and anxiety and personality disorders, but there were no indications of a bipolar type mood disorder (Tr. 401-02, 404-09). Plaintiff went to the Arthritis Center of Nebraska on September 13, 2011 (Tr. 384). Dr. Valente suspected a psychological component to her pain complaints (Tr. 386).

Plaintiff testified that she took Xanax a couple times a week, two to eight tablets of hydrocodone daily, Flexeril three to four times a week, and Zoloft, Geodon and Depakote every day (Tr. 46). She said her only hobby was watching television, and that her husband did the cooking, cleaning, laundry, and shopping (Tr. 47-48). Plaintiff testified that she could lift only three pounds with her right hand and eight pounds with her non-dominant left hand, and ten pounds using both hands (Tr. 49). Plaintiff's husband testified that he agreed with his wife's testimony and "pretty much" did everything from caregiving to shopping (Tr. 64).

The ALJ asked a VE to consider hypothetical claimant with the same limitations the ALJ ultimately included in his RFC finding (Tr. 22, 66-67). The VE testified that the hypothetical claimant could perform Plaintiff's past job as an office helper as employees generally performed the job in the economy (Tr. 67-68). Alternatively, the VE testified that the hypothetical claimant could perform other light, unskilled jobs, such as photocopy machine operator (DOT#207.685-014), mail clerk (Dictionary of Occupational Titles (DOT) #209.687-026), and small products assembler (DOT#706.684-022) (Tr. 68). In response to questions from Plaintiff's attorney, the VE testified that if Plaintiff's testimony was fully credible, she would not be able to sustain work (Tr. 69-70).

After the ALJ issued his denial decision, Plaintiff's attorney requested Dr. Hajj complete a questionnaire in January 2013 (Tr. 449). Dr. Hajj noted that Plaintiff had fibromyalgia, depression and anxiety (Tr. 449). She first saw Plaintiff on November 11, 2010, and saw her every five to six months (Tr. 449). She said Plaintiff has high anxiety levels and difficulty with concentration and attention (Tr. 450). She also said that Plaintiff could not sit, stand or walk for any extended period of time (i.e., less than 10 minutes) (Tr. 450). Dr. Hajj concluded that Plaintiff could not work due to chronic pain and high levels of anxiety and an inability to concentrate (Tr. 450).

4

**II.  STANDARD OF REVIEW**

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner.  *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004) (quoting *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)).  Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole.  *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (citing *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)), *see also Harris v. Barnhart,* 356 F.3d 926, 928 (8th Cir. 2004) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)).  Under this standard, substantial evidence means something "less than a preponderance" of the evidence, but "more than a mere scintilla."  *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); accord *Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990).  "Substantial evidence is *relevant evidence* that a reasonable mind would accept as adequate to support the Commissioner's conclusion."  *Perkins*, 648 F.3d at 897 (emphasis added) (citing *Medhaug,* 578 F.3d at 813).

In determining whether the evidence in the record as a whole is substantial, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it."  *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).  If the court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently.  *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

## III. DISCUSSION

Plaintiff contends that the ALJ used a legally defective standard at the step five disability analysis; inappropriately discredited her testimony; chose jobs in the economy that are outside of her RFC; incorrectly interpreted her GAF[2] scores; and improperly assigned weight to a non-treating physician and to third party opinions; and the ALJ erred in finding she does not meet a Listing for disability.

### A. Law

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. Further, "if a plaintiff's symptoms are controlled or treatable with medication, the plaintiff cannot be considered disabled." *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)).

A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If a claimant suffers from an impairment that is included in the listing

---

[2] The Global Assessment of Functioning ("GAF") Scale is a rating system for reporting a clinician's judgment of an individual's overall level of functioning, not including physical impairments or environmental limitations. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text revision 2000) ("DSM-IV-TR"). A GAF score of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR at 34. In the most recent publication of the American Psychiatric Association, the DSM-5, the GAF scale is no longer used.

6

of presumptively disabling impairments ("Listings"), or suffers from an impairment equal to such listed impairment, the claimant will be determined disabled without considering age, education, or work experience. *Singh*, 222 F.3d at 451 (citing *Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984).

To determine whether or not a disability exists and meets the requirements of the SSA, an ALJ evaluates a disability claim according to a five-step sequential analysis prescribed by Social Security regulations. The ALJ examines any current work activity, the severity of the claimant's impairments, the claimant's residual functional capacity and age, education and work experience. 20 C.F.R. § 404.1520(a). *See Singh*, 222 F.3d at 451 (8th Cir. 2000) (citing *Braswell*, 733 F.2d at 533). In this five-step process, the ALJ first considers any work activity of the claimant. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is involved in substantial gainful activity, they cannot be found disabled. *Id.* Second, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). In order for an impairment to meet the requirements in this step, the duration requirement of 20 C.F.R. § 404.1509 must be met. *Id.* 20 C.F.R. § 404.1509 requires that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months," or it must be expected to result in death. If this duration requirement is not met, the ALJ will determine that the claimant is not disabled. *Id.* If the duration requirement is met, the ALJ will move to step three.

At the third step in the process, the ALJ determines whether the impairment meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds that this step is met, the claimant is found disabled. *Id.* If the impairment is found not to meet or equal one of the listings, the ALJ moves to step four. *Id.* At the fourth step, the ALJ considers assessments of residual functional capacity

7

and past relevant work of the claimant to determine if the claimant is able to perform their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is able to perform their past relevant work, the ALJ will find that the claimant is not disabled. *Id.*

If the claimant is not able to perform their past relevant work, the ALJ moves to step five and assesses whether the claimant may be able to perform other work. 20 C.F.R. § 404.1520(a)(4)(v). However, "if the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity ("RFC") to perform other kinds of work, and second, that other such work exists in substantial numbers in the national economy." *See* 20 C.F.R. § 404.1520(a); *Singh*, 222 F.3d at 451 (citing *Braswell*, 733 F.2d at 533). "A claimant's residual functional capacity is a medical question." *Id.* RFC is defined as the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, i.e., eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184 (July 2, 1996). RFC is what an individual can still do despite her impairments and the resulting limitations. *Id.* An ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). While RFC is a medical question, RFC is not based solely on "medical" evidence. *See Nevland*, 204 F.3d at 858; *see also McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) and *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (holding that the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of the limitations). If the claimant is able to perform other work,

the ALJ will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is not able to perform other work, the ALJ will find that the claimant is disabled. *Id.*

When performing their analysis, the ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment. *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir.1996). Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (quoting *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence'" on the record. *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2) (2012)). However, the SSA has ruled that "the adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion." SSR 96-2p, 1996 WL 374188 (July 2, 1996) at *2. The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)), *see also Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) (stating that "a treating physician's opinion deserves no greater respect than any other physician's opinion when the opinion consists of 'nothing more than vague, conclusory statements.'").

According to the SSA, the judgment of a physician or psychologist designated by the Commissioner on the issue of whether a claimant has impairments that equal a Listing must be received into the record as expert opinion evidence and given appropriate weight. SSR

9

96-6p, 1996 WL 374180 (July 2, 1996) at *3. Further, those opinions may be entitled to greater weight than the opinions of treating or examining sources. *Id*.; *Richardson v. Astrue*, 2011 WL 4479215 (E.D. Ark. Sept. 28, 2011). Additionally, the opinions of a treating physician may be discounted when they are inconsistent with the overall assessment of the physician or the opinions of other physicians, "especially when those opinions are supported by more or better medical evidence." *Id.* (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir.2000)); *Merckling v. Astrue*, 2012 WL 13706 (E.D. Mo. Jan. 4, 2012).

An ALJ cannot substitute his opinion for medical opinions. *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) *(*quoting *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990)). Additionally, "in instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints *solely* on the basis of such personal observations." SSR 96-8p, 1996 WL 374184 (July 2, 1996); *see also*: *Polaski v. Heckler*, 739 F.2d 1320, 1322 (1984), *Olson v. Astrue*, Civ. No. 11-3491, 2012 WL 6861346 at *15 (D.Minn. Dec. 19, 2010), *Goff v. Barnhart*, 421 F.3d 785, 792, *Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir. 1992).

To assist an ALJ in making a disability determination, a VE is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). A VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete

consequences of a claimant's deficiencies." *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (citing *Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997) and *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)). Courts apply a harmless error analysis during judicial review of administrative decisions that are in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003).

The ALJ has a duty to fully develop the record before making a determination to either award or deny benefits. *Snead v. Barnhart*, 360 F.3d 834, 838 (2004). This includes ensuring that the record includes evidence addressing impairments from either a treating or examining physician. *Id.* Additionally, the duty to develop the record may include seeking clarification when evidence in the record is either unclear or contradictory. *Smith v. Barnhart*, 435 F.3d 926, 930 (2006). A failure by the ALJ to fully develop the record is generally cause for remanding the decision in order for the ALJ to have the opportunity to complete the record.

**B. Step Five**

Plaintiff contends the ALJ used a legally defective standard at the Step Five analysis. Rather than applying the language that requires a claimant to be able to engage in substantial gainful activity, plaintiff argues the ALJ applied a standard more favorable to the Commissioner, stating:

> If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. (Tr. 19)

> [The ALJ] must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work

11

experience. If the claimant is able to do other work, she is not disabled. (Tr. 19)

This standard, according to the plaintiff, does not require that the past relevant work or the work in question be either substantial or gainful. See 20 C.F.R. §§ 404.1505, 404.1572. Further, plaintiff contends the ALJ made no determination as to whether plaintiff could perform work at the positions of office helper, photocopy machine operator, mail clerk or small products assembler on a regular and continuing basis. "[A] 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule". *Id*. "[A]n RFC determination must be based on a claimant's ability to "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Astrue,* 648 F.3d 605, 617 (8th Cir. 2011). At her previous work, St. Elizabeth's Hospital, plaintiff received write-ups for missing work due to impairments. She testified that she only worked part-time, yet she missed one to two days a week anyway. The VE testified in this case that if plaintiff missed that much work she would be unable to sustain gainful employment. Tr. 69. Further, plaintiff argues that she is unable to perform light work, because she cannot stand or walk for six hours in an eight hour day. Dr. Hajj found that Ms. Wright would be unable to sustain standing, walking, or sitting for any period greater than 10 minutes (Tr. 450). With regard to her mental limitations, the ALJ concluded that plaintiff could do simple, routine and repetitive tasks. The VE testified that an individual whose issues with concentration and memory were as severe as Ms. Wright's would not be able to sustain gainful employment (Tr. 69-70). Dr. Carlock opined that these forgetfulness and concentration issues are symptoms of Ms. Wright's depression and anxiety (Tr. 402). Plaintiff's previous employer noted that Ms.

Wright would be tired at the end of each shift, becoming slower and more distracted in the afternoon (Tr. 281). So, they shortened her shifts. *Id.*

The Court agrees with the plaintiff. First, the ALJ did to some degree change the language of the RFC finding and failed to focus on the ability of plaintiff to do the work for 8 hours per day, 5 days per week. The claimant must be able to engage in substantial gainful activity, and the ALJ did not place his emphasis on that requirement. Second, it is clear from the records that plaintiff did receive write-ups for missing work at her previous job, even though she received accommodations on the hours worked and was allowed to work on a part-time basis. The ALJ failed to analyze whether plaintiff could perform an 8 hour and 5 day a week position.

### C. Discrediting of Plaintiff

The ALJ must evaluate subjective complaints based on the claimant's credibility. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007).

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
> 1) the claimant's daily activities;
> 2) the duration, frequency and intensity of the pain;
> 3) precipitating and aggravating factors;
> 4) dosage, effectiveness and side effects of medication;
> 5) functional restrictions.
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications." *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000). "A failure to follow a recommended course of

treatment also weighs against a claimant's credibility." *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). However, the ALJ may not discredit the claimant's subjective complaints on this basis without first considering explanations offered or other information in the record. SSR 96-7P at 7.

"An ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole." *Jackson v. Apfel*, 162 F.3d 533, 538 (8th Cir. 1998) (citations omitted). A claimant may have disabling pain and still be able to perform some daily home activities. *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998) ("the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work" (internal quotation marks omitted) (citations omitted)). The consistency of the claimant's various statements and the consistency between statements and other evidence provides a "strong indication" of the credibility of the claimant's subjective claims. SSR 96-7P.

Plaintiff argues that the ALJ discredited her allegations of pain and other symptoms, because she did not continually take pain medications for the same. The ALJ stated: "use of medications also suggests that her symptoms and impairments are not as serious as she alleges. Despite her complaints of allegedly disabling symptoms, the claimant has rarely taken any medications for those symptoms" (Tr. 25). However, as stated above, it is clear the plaintiff did in fact take a number of medications at various times for both her mental and physical impairments over a number of years. The Court notes that focusing on the times she did not take medication, but not considering the times she was medicated, is not substantial evidence upon which to base a decision. Plaintiff notes and the Court agrees that the social security regulations require the ALJ to take into account the reasons why the

14

symptoms might not need more frequent medical visits. SSR 96-7p.[3] First, plaintiff had not had health insurance since November 2011. Second, she could no longer afford her medication, Seroquel. Third, the state agency doctor who evaluated plaintiff stated she was taking the appropriate medication for her conditions. Tr. 372. She also asserted that she had serious side effects to some of her medications. She further testified that certain activities, such as leaving her home, stress, sunlight and heat exacerbated her symptoms. Tr. 238. She has pain which limits her daily activities, and her husband does most of the chores and shopping. She uses a heating pad and shower heat and stretching exercises, resting and relaxing to help her symptoms. The ALJ failed to take into account any of these reasons, and simply discredited plaintiff's failure to take pain medications more consistently, concluding she did not medically need them. Further, the record is replete with many documented entries by her physicians of medications taken by the plaintiff.

---

[3] According to SSR 96-7p:

[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to re-contact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

• The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.

• The individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.

• The individual may not take prescription medication because the side effects are less tolerable than the symptoms.

• The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

• The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.

With regard to her finances the ALJ found plaintiff only suffers from "moderate difficulties with concentration, persistence, or pace" because she "deals with the majority of her family's finances" (Tr. 21). Plaintiff testified she has to do her math over and over again and her husband has to help her, as it becomes overwhelming for her.

Plaintiff contends that the ALJ improperly determined her GAF scores which ranged from 48-52[4] and "is indicative of serious symptoms or impairments" but that "her low GAF scores could be explained by her continued unemployment and other non-disability factors (Tr. 24). There is no evidence, contends plaintiff, that backs up the ALJ's claim that her GAF scores would be higher if she was working. The Court agrees. This statement by the ALJ is not supported by any evidence, much less substantial evidence, and is out of the realm of his ability to issue an opinion. There is no objective evidence whatsoever to support the ALJ's determination in this regard.

The plaintiff contends that the ALJ failed to give enough weight to her husband's testimony, stating his statements were "duplicative of allegations made by the claimant elsewhere in the record, which, for the reasons discussed, are not entirely credible" (Tr. 26-27). This argues plaintiff is not in accord with SSR 06-03p which permits information from other sources. The Court does not view this as "duplicative" evidence. On the contrary, absent a credibility issue, this would be corroborative evidence.

### D. Non-treating Medical Sources

---

[4] A GAF of 41-50 indicates "Serious symptoms (e.g, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., American Psychiatric Association 2000). A GAF of 51-60 indicates "Moderate symptoms (e.g., flat effect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." (Id.).

Plaintiff contends the ALJ gave the greatest weight to the state agency doctors. *See* Tr. 340-357, 366-374, 421-422, 423. Her treating doctors, however, Dr. Duffy, Dr. Bohart, and Dr. Hajj observed plaintiff on numerous visits and over a length of time, and the state agency doctors spent limited time with her. The mental RFC filled out by Dr. Branham, Ph.D., states that plaintiff "can be expected to regain the ability to handle at least simple instructions, as well as the other functional capacities listed on the above form" (Tr. 342). First, argues plaintiff, this opinion was given one year prior to the ALJ's ruling, and second there is no evidence that plaintiff regained this ability. Dr. Reed, another state agency doctor, stated that:

> Onset of severe symptoms started in April/May of [2011] and the clmt has been taking appropriate medications. Duration is an issue. With continued treatment and time, the clmt should have improvement of symptoms to the extent that she will be capable of lighter types of work activity 12 months post AOD of 4/29/11.

(Tr. 372). There is no indication, again, that she had improvement during this time period. In fact, she reported an ability to stand for 10 to 15 minutes on June 25, 2011, and on November 29, 2012, she could only stand for 5 minutes without changing positions. Tr. 236, 288. There is no evidence that plaintiff's mental health issues became sufficiently better during this time, so as to allow her to work a 5 day, 8 hour workweek. In fact, Dr. Hajj submitted a report, after the ALJ decision but before her appeal, indicating plaintiff is totally disabled. Absent any evidence that plaintiff improved, it is not substantial evidence, particularly when it is speculative.

### E. Listing

Plaintiff argues she meets the listing of "B" 12.04, 12.06, and 12.08 of 20 CFR Part 404, Subpart P, Appendix 1, Affective Disorder, Anxiety Related Disorder and Personality Disorder. She argues she has marked restrictions of daily living, difficulties with social

functioning and problems maintaining concentration, persistence or pace. The Court finds that the evidence presented shows a serious impairment, in terms of plaintiff's mental health. After reviewing the evidence, as stated herein, the Court finds there was arguably not substantial evidence to support the ALJ's finding otherwise. The plaintiff's significant mental health issues is very apparent from the record. However, because the Court has determined that the ALJ erred in any event at the Level 5 determination, the Court need not address this issue in detail.

For all of the reasons found above, this court finds that the determination of the ALJ to deny benefits is not supported by substantial evidence. "Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992). The Court finds plaintiff has met this burden.

THEREFORE, IT IS ORDERED THAT the plaintiff's complaint to review and set aside the decision of the Commissioner, Filing No. 1, is granted. It is further ordered that the Commissioner shall award benefits in this case. The plaintiff shall have 14 days from the date of this memorandum and order to file her properly supported motion and brief requesting attorney fees, if she chooses to do so. Thereafter, the Commissioner shall have 14 days to respond to the motion. A separate judgment will be entered in accordance with this memorandum and order.

Dated this 9th day of March, 2015.

BY THE COURT:

s/ Joseph F. Bataillon  
Senior United States District Judge